AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

*Sealed — Unofficial staff access to this instrument are prohibited by court order.*

United States Courts
Southern District of Texas
FILED
SEP -1 2016
David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Drew Dillon Watson | ) | Case No. H16-1277M |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   April 16, 2016 to May 14, 2016   in the county of   Harris   in the
  Southern   District of   Texas  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2422(b) | Coercion and Enticement |
| 18 U.S.C. § 2423(a) | Transportation with Intent to Engage in Criminal Sexual Activity |
| 18 U.S.C. § 2423(b) | Travel with Intent to Engage in Illicit Sexual Conduct |
| 18 U.S.C. § 2423(e) | Attempt and Conspiracy |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Ryan J. Shultz, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: September 1, 2016

*Judge's signature*

City and state:   Houston, Texas           Stephen Wm. Smith, US Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Ryan J. Shultz, being duly sworn, hereby depose and state the following:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI). I have been a Special Agent of the FBI since September 2008. I am charged with the duty of investigating violations of the laws of the United States, collecting evidence in cases in which the United States is or may be a party in interest, and performing other duties imposed by law. During my assignment with the FBI, I have participated in the execution of search warrants for documents and other evidence, including computers and electronic media, in cases involving child pornography and the sexual exploitation of children. I have investigated many cases involving child pornography and the sexual exploitation of children. I have also participated in various FBI mandated and volunteer training for the investigation and enforcement of federal child exploitation laws in which computers are often used as a means for grooming, enticing and/or coercing minors to engage in illicit sexual conduct.

2. This affidavit is submitted for the limited purpose of establishing probable cause in support of the attached Complaint and therefore contains only a summary of the relevant facts. I have not included each and every fact known by me concerning the individuals and events described herein. The information contained in this affidavit is based on my firsthand knowledge as well as information obtained through witness interviews conducted by me or other Law Enforcement Officers or Special Agents of the FBI and a review of various records.

3. This investigation concerns alleged violations of Title 18, United States Code, Sections 2422 and 2423, which state:

    a. 2422(b) – Coercion and enticement – Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

    b. 2423(a) - Transportation with Intent to Engage in Criminal Sexual Activity - A person

who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

c. 2423(b) - Travel With Intent To Engage in Illicit Sexual Conduct - A person who travels in interstate commerce or travels into the United States, or a United States citizen or an alien admitted for permanent residence in the United States who travels in foreign commerce, for the purpose of engaging in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

d. 2423(e) – Attempt and conspiracy - Whoever attempts or conspires to violate subsection (a), (b), (c), or (d) shall be punishable in the same manner as a completed violation of that subsection.

e. As used in this section, the term "illicit sexual conduct" means — (1) a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States; (2) any commercial sex act (as defined in section 1591) with a person under 18 years of age.

4. On May 13, 2016, Lansing Police Department, of Lansing, Illinois, received a complaint which alleged that a 15-year-old black male, hereinafter referred to as KM, was the victim of indecent solicitation of a minor. The report, which was filed by KM's mother, explained that she had dropped off KM outside a friend's house at an address on Ridgewood Avenue in Lansing, Illinois, where she understood KM would be staying for the weekend. After dropping off KM, she felt something was suspicious and looped around the block to investigate. When she returned to the aforementioned address, she observed KM getting into a white vehicle bearing a partial Illinois State license plate of "V99". KM's mom observed a stocky white male, approximately 30 years of age, seated in the driver's seat of the vehicle. She approached the vehicle and confronted the driver. During the short confrontation, KM exited the passenger's side of the vehicle and the driver immediately departed the area. Together, KM and his mother reported the incident to Lansing PD.

5. During the filing of the incident report, KM advised that he had been communicating with the unidentified white male via cell phone for approximately one month and knew him by the name Drew Dillon Watson. KM met Watson through a school friend who had also been in contact with Watson via social media. KM advised that Watson resided in Texas, but had travelled to the area with plans to hang out with KM at a local area hotel. KM stated that he and Watson had engaged in sexually explicit conversations via text messages and social media and that this was their first time meeting in person. A review of KM's cellular telephone identified Watson's telephone number as 713-487-6771.

6. After obtaining a Texas State driver's license photograph of Drew Dillon Watson, Lansing PD requested that KM's mother attempt to identify Watson in a photo lineup which contained six white males that appeared to be of similar age. She positively identified Watson as the man she had observed and confronted outside of an address on Ridgewood Avenue in Lansing, Illinois.

7. A consensual review of KM's personal electronic devices revealed numerous conversations between KM and Watson via Kik, Snapchat, Skype and text message. A review of the Kik application on KM's phone revealed a chat session with a user identified as "drewtwo99". Kik user drewtwo99 had a profile picture which portrayed a white male that matched the physical description of Drew Dillon Watson. KM and Watson discussed being homosexual and Watson suggested that KM utilize "Grindr" to meet people, but warned that users are supposed to be at least 18 years of age. Watson also provided his Snapchat user handle as "drewtwo99".

8. A review of KM's cellular telephone revealed a note application with one entry dated May 3, 2016, which was entitled, "The plan". In summary, the text outlined several steps that involved KM packing clothing and lying to his mother so that she would believe KM was spending the weekend with school friends at Six Flags, band practice, tennis practice and sleep-overs. In fact, KM had planned to meet up with Watson so that they could spend the weekend together.

9. Investigators interviewed KM's friends, to include a fellow high school student hereinafter referred to as BR. BR advised that she had also been in contact with Drew Watson via Skype and she knew Watson by his Skype user handle, "drewtwo99". BR was aware of KM's relationship with Watson and stated that she believed KM and

Watson were sexually active over the phone. BR explained that KM had previously engaged her in a conversation by stating, "I think I just lost my virginity over the phone." KM had also referred to Watson as his boyfriend.

10. BR acknowledged being aware that KM and Watson had made a plan to get together, but did not know the details of what had occurred on May 13, 2016. However, on Sunday, May 15, 2016, at approximately 6:50 PM, BR reached out to Watson via Skype in order to find out what had occurred. Watson expressed he was worried about KM and stated, "This is my fault. I shouldn't have let him put himself at such risk knowing how his mom and dad would react."

11. On May 17, 2016, at approximately 8:13 PM, BR and Watson connected again via Skype and discussed the events of May 13, 2016. Watson typed, "I came up to see him [KM], was waiting outside his friend's house, his mom dropped him off, he came over to my car, was about to get in, and then his mom circled back around, saw him, and told him he wasn't going to go with me because she didn't know me, he lied and said I was your dad, I played along because I was on the spot, but she obviously didn't believe it. And that was it. That was the last time I saw or talked to [KM]." When BR asked if KM and Drew were going to "do stuff", Watson stated, "We didn't have firm plans, just a sort of see what happens attitude." When asked if he was still in the area, Watson responded, "no"…"I left immediately"…"flew back home that night". BR also asked Watson if he knew how old KM was and stated, "…cause he's still a kid". Watson simply replied, "yes I know".

12. Investigators interviewed another high school friend of KM, hereinafter referred to as CV. CV stated he had been in contact with Drew Watson via Skype and was familiar with the plan for KM and Watson to get together. KM had told CV that he and Watson had talked about having sex together when they finally met. KM elaborated by stating, "Drew is going to get me drunk and we're gonna have sex." According to CV, KM reported to CV that Watson had told KM to practice on himself in order to prepare his body for anal sex.

13. Based on the above, and that the matter appeared to indicate that Watson traveled across state lines in attempt to engage in sexual conduct with a minor, Lansing PD contacted and requested the assistance of the Federal Bureau of Investigation.

14. On May 23, 2016, KM was interviewed by Special Agents out of FBI Chicago. KM identified himself as a 15-year-old student that attends a high school in Lansing, Illinois. KM acknowledged having met an adult male online who he knew as Drew Dillon Watson. KM estimated that he and Watson began their online relationship on or about April 16, 2016, and during that time had communicated via text message, telephone calls, Skype, Kik and Snapchat. KM confirmed Watson's telephone number as 713-487-6771 and identified Watson's online user handles for Kik, Snapchat and Skype as "drewtwo99".

15. During those online communications, which occurred every day, Watson had stated he was approximately 30 years old and had formerly been employed as a physics teacher at a Texas area high school. KM informed Watson that he was a 16-year old high school student at a school in Lansing, Illinois. As the communications progressed, Watson and KM began sending images and videos to one another. According to KM, Watson sent full body nude images of himself, to include images of his penis, to KM's cellular telephone. KM stated that he only sent images of his face to Watson.

16. After it was brought up by KM, Watson expressed an interest in traveling to Illinois to meet KM in person. Watson created a list of activities they could do together during the visit, which included dinner at 'Two' restaurant in Chicago, Illinois on Saturday, May 16, 2016, at 7:00 PM. Watson also expressed concern for how much trouble he could get into if the two of them were caught together.

17. According to the plan, Watson was to take a flight, via Southwest Airlines, on Thursday, May 12, 2016, from Houston, Texas to Chicago, Illinois. Upon his arrival, Watson was to pick up a rental car from the airport and proceed to a hotel he had reserved just across the state line in Indiana. Watson stated that he planned to remain in the area until the following Monday, May 16, 2016.

18. KM and Watson had derived a plan in which Watson would pick up KM on Friday, May 13, 2016. KM was to be dropped off outside a friend's residence before being picked up by Watson so that they could spend the weekend together. KM believed Watson's intentions to be sexual in nature in consideration that he and Watson had discussed engaging in various sex acts once they were alone. KM has not communicated with

Watson since the events involving his mother and Watson on the afternoon of May 13, 2016.

19. Although KM had made attempts to delete his communications with Watson, an extraction of KM's cellular telephone, an Apple iPhone, revealed the presence of a text chat between KM and a contact labeled "unknown2". In a follow-up interview, KM positively identified user "unknown2" as Drew Dillon Watson.

20. A review of the aforementioned chat communications revealed that segments of the chats, to include any images and/or videos, appeared to be missing; however, a general summary of what was recovered was highlighted for relevance below. Furthermore, it was noted that the date and time stamps associated with each respective communication appeared to be incorrect. For example, an early entry in the communications was dated August 18, 1934. As a result, the dates used to mark each communication below were primarily utilized for reference purposes.

**Knowledge of Engaging With a Minor**

21. On May 8, 2016, KM stated, "I'm only 16 lol", to which Watson responded, "you can work at 16". Watson then provided KM with multiple links regarding child labor laws.

**Communications Regarding Sexually Explicit Conduct**

22. On May 4, 2016, KM communicated to Watson that he had morning wood, which was understood to mean that KM had an erection. Watson responded, "Well if I were there I'd help you out". "I'd suck you off and drink your cum". "Eveyr last drop".

23. On May 6, 2016, KM expressed to Watson that he was nervous regarding a conference tennis match he was about to compete in. Watson responded, "just take a deep breath and think about me shoving my cock down your throat instead"… "or me eating out that ass". KM responded, "Omfg drew".

24. After learning of KM's success in the aforementioned tennis match, Watson expressed an interest in rewarding KM. Watson initially suggested "kisses"; however, after KM asked for more than kisses Watson stated, "You sure you want me to fuck you?" Approximately five minutes later Watson said, "…I can't wait to see that booty, lock your hole and fill it with my dick".

25. On May 9, 2016, Watson stated, "chupa mi pene, beb ?" KM responded, "O…so this is wha it has come to.."… "Si btw". Drew then stated, "I knew you were naughty". Your affiant conducted a copy and paste of the Spanish text into Google Translate. The returned results translated the text to say, "suck my cock, baby?"

26. On May 12, 2016, KM stated, "Ill give u kisses while my hand reaches down ur dick n strokes it repetitively". Watson responded, "omg baby I would love that. And I'd reach down and stroke yours while I kissed you back". KM then said, Sweet, then I'll get down on my knees n unzip ur pants to reveal ur cock n it in my mouth". Watson responded, "mm baby then I'd put my hand on the back of your head and push you forward gently to take it all in down your throat."

27. On the same date, Watson stated, "…I'd love to kiss you all over your body and then grind up against you while you make me so hard".

**Communications Regarding "The Plan"**

28. On an unknown date and time, Watson stated, "So the plan is, I fly out Thursday night, get into Chicago and pick up my rental car at the airport, then drive to the Hotel. I should be at the hotel by around 1am or so in the morning, maybe 1:30am, on Friday morning".

29. On May 4, 2016, Watson stated, "just 10 more days baby and I'll be holding you in my arms". That was followed by, "next Friday"…"after you get out of school"…"make sure you get permission"…"I'm gonna meet the love of my life for the first time". It was noted that ten days from May 4, 2016, would place their planned meeting for May 13, 2016.

30. On May 6, 2016, KM said, "I can't wait to do all the things we've talked about". Watson responded, "me too ☺".

31. On May 11, 2016, Watson stated, "7740 Corinne Dr, Hammond, IN 46323". A Google query of the stated address revealed it was associated with Residence Inn by Marriott of Chicago Southeast. An administrative subpoena served to Residence Inn provided information which confirmed that Drew Watson, with a residential address on Post Oak Manor Drive in Houston, Texas, had prepaid a reservation for Room #301 with a scheduled check-in date of May 12, 2016, and a check-out date of May 16, 2016. The room was reserved and paid for with a Visa credit card number ending in 6757. A review

of the Residence Inn surveillance cameras revealed a white male, fitting the physical description of Watson, checking into the hotel at approximately 2:59 AM on May 13, 2016, and departing the hotel, with his luggage, at approximately 8:08 PM later that same evening.

32. Also on May 11, 2016, Watson detailed that he planned to get to the hotel and sleep until it was time for him to pick KM up from school. Watson then requested to confirm KM's school address. A Google query of the address revealed it was associated with KM's high school.

33. On May 13, 2016, Watson stated, "We have reservations for Saturday night at 7pm" at 'Two' in Chicago. Your affiant telephonically contacted 'Two' and confirmed that the restaurant had on record a 7:00 PM party of two reservation for Saturday, May 14, 2016, under the name "Drew Watson". A 'Two' representative advised that the reservation was established online on May 12, 2016, and was confirmed via telephone number 713-487-6771 the following day.

34. Also on May 13, 2016, Watson advised, "I'm at the airport now". Approximately 50 minutes later, at 12:37 AM on May 14, 2016, Watson stated "I'm in Chicago waiting for my bag". That was followed approximately two hours later by Watson advising, "I made it to the hotel baby" and "I'm so close to you".

35. On May 14, 2016, at approximately 5:05 AM, Watson stated, "What time should I be at the spot to pick you up this afternoon" and "what side of the school is it on?" At approximately 8:00 AM, KM advised that they would have to change the meeting location and provided Watson with an address on Ridgewood Avenue as the new meeting location. At 10:16 AM, Watson advised that it would be an approximate 15 minute drive for him from the hotel. A Google Maps query mapping the distance between the Residence Inn of Chicago Southeast to the address on Ridgewood Avenue determined a travel time of approximately 12 – 15 minutes.

36. On the same date, at approximately 5:00 PM, Watson advised that he was at the pre-determined meeting place, specifically parked in front of the agreed upon address on Ridgewood Avenue, and was driving a white in color hatchback Fiat bearing license plate number "V99 2352".

37. A review of the Residence Inn of Chicago Southeast parking lot surveillance camera footage revealed video from the early morning hours of May 13, 2016, which appeared to portray a white in color Fiat, with a hatchback, entering and parking within the private parking lot of the Residence Inn. The arrival of said vehicle, which occurred at approximately 2:56 AM, was immediately followed by Watson checking into the hotel at 2:59 AM.

38. An administrative subpoena served to Southwest Airlines revealed that Drew Watson had traveled from William P. Hobby Airport (HOU) to Chicago Midway International Airport (MDW) via Southwest Airlines flight #1045 on May 12, 2016, with a departure time of 9:55 PM and a subsequent arrival time of May 13, 2016, at 12:15 AM. Watson was confirmed as a passenger on the flight on May 12, 2016, at 9:29 PM.

39. The flight was booked on April 25, 2016, at approximately 11:13 PM and confirmation messages were sent to e-mail address drewtwo99@gmail.com and to telephone number 713-487-6771. Watson had also provided a billing address to a residence on Post Oak Manor Drive in Houston, Texas.

40. A review of the full itinerary revealed Watson was originally scheduled to return from MDW to HOU via Southwest Airlines flight #898 on May 16, 2016, with a departure time of 10:00 PM and a subsequent arrival time of May 17, 2016, at 12:25 AM.

41. Records revealed Watson actually traveled from MDW to HOU via Southwest Airlines flight #898 on May 13, 2016, with a departure time of 10:00 PM and a subsequent arrival time of May 14, 2016, at 12:35 AM.

42. The flight was booked on May 13, 2016, at 7:03 PM and confirmation messages were sent to e-mail address drewtwo99@gmail.com and to telephone number 713-487-6771. Watson was confirmed as a passenger on the flight on May 13, 2016, at 9:42 PM. The flight was paid for by a Visa with credit card number ending in 6757.

43. A review of Watson's Southwest Airlines reward profile further identified him as having a date of birth of XXX, XX, 1986 and a residential address to a home on Post Oak Manor Drive in Houston, Texas.

44. An administrative subpoena served to Kik in pursuit of subscriber information for user account "drewtwo99" revealed that the user consistently logged into the application utilizing IP address 172.56.14.74, which was registered to T-Mobile. Kik also identified

the electronic device accessing the application as a Samsung Android device with model #SM-N910A. A Google query of the model number identified the device as a Samsung Galaxy Note 4. While the subscriber failed to provide a legitimate name for the drewtwo99 Kik account, they did provide a birth date which matched that of Drew Dillon Watson as well as a confirmed e-mail address of "drewtwo99@gmail.com". T-Mobile was unable to identify the subscriber associated with the named IP address.

45. An administrative subpoena served to Snapchat in pursuit of subscriber information for user account "drewtwo99" revealed the account was created from IP address 73.6.75.30, which was registered to Comcast. An administrative subpoena served to Comcast identified the subscriber as Drew Watson at an address on Post Oak Manor Drive in Houston, Texas.

46. On August 31, 2016, your affiant conducted physical surveillance at the aforementioned address on Post Oak Manor Drive in Houston, Texas. At approximately 6:12 AM, a white Chevrolet Volt bearing Texas State license plate number HLH 3915 was observed exiting the private garage of the residence. The driver of the vehicle was observed to be a white male, approximately 30 years of age, matching the physical description of Drew Dillon Watson.

47. At approximately 6:35 AM, the aforementioned motor vehicle was observed pulling into the private parking lot of an identified public middle school that serves approximately 1,000 students, grades 6 – 12. Furthermore, a review of the online staff directory identified Drew Watson as a Staff Instructor of Physics.

## CONCLUSION

48. Based on all the information set forth above, your affiant believes there is probable cause to believe that between April 16, 2016 and May 14, 2016, Drew Dillon Watson was in violation of Title 18, United States Code, Sections 2422(b) – Coercion and enticement; 2423(a) - Transportation with Intent to Engage in Criminal Sexual Activity; 2423(b) - Travel With Intent To Engage in Illicit Sexual Conduct; and 2423(e) – Attempt and conspiracy.

Ryan J. Shultz
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this 1st day of September, 2016, and I find probable cause.

Stephen Wm. Smith
United States Magistrate Judge